PRESIDIO COUNTY v. S. E. WALKER.

Decided June 4, 1902.

**1.—County Treasurer—Commissioners—Refunding Bonds.**

A county treasurer is entitled to his commissions on money realized on a sale of county bonds issued and sold for the purpose of refunding outstanding bonds of the same character, although the money was by direction of the county judge, acting as the agent of the county, turned over by the purchaser directly to the owner of the old bonds.

**2.—Same—Interest on Commissions.**

Where the statutory limit of $2000 per year as compensation for the county treasurer would not have been exceeded had certain commissions he was entitled to been paid to him when due, interest thereon is authorized for the time payment is delayed, although it will increase the compensation beyond such limit.

Appeal from Presidio. Tried before Hon. A. M. Walthall.

*W. M. Peticolas,* for appellant.

*J. A. Gillette,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by S. E. Walker, treasurer of Presidio County, to recover statutory commissions on the sum of $30,683.81 alleged to have been received by the county from the sale of certain bonds issued by it and paid out by the county during the term of appellee's office as county treasurer.

Defendant county answered by general and special exceptions, and plead specially that the bonds issued to Presidio County, upon which appellee claims his commissions, were issued merely in lieu and in substitution of a series of old bonds theretofore issued and outstanding against the county. In other words, that the last series of bonds were merely exchanged for the former, and no money was actually received and paid out by Presidio County in the transaction.

The case was tried by the court without a jury, and the trial resulted in a judgment in favor of the appellee for the sum of $1215, principal, and $100.90 interest, which was computed on November 3, 1900.

*Conclusions of Fact.*—On the 19th day of May, 1900, at a legal meeting of the County Commissioners Court of Presidio County, the following order was duly passed and spread upon the minutes of the court: "Whereas the counties of Jeff Davis, Brewster, Buchel, and Foley were cut off in 1887 and created from the territory of Presidio County, and whereas said counties of Buchel and Foley were never organized and have since been abolished by an act of the Legislature of the State of Texas, and their territory included in and made a part of Brewster County. And whereas Brewster County is now liable for and justly owes the proportion of the indebtedness hereinafter mentioned. And

whereas said county of Presidio issued in 1886, for the purpose of building and constructing a courthouse and jail, all of the courthouse and jail bonds hereinafter mentioned, and all of the same were the valid outstanding obligations of Presidio County and represented a valid legal indebtedness of Presidio County, in 1887, at the time said new counties were cut off, as aforesaid, from Presidio County. And whereas by a judgment of the District Court of Presidio County, in cause No. 615, Presidio County v. Jeff Davis County, rendered at the March term of said court, 1899 (affirmed by the Court of Civil Appeals), the proportionate liability of Jeff Davis and Brewster counties and of said counties of Buchel and Foley on account of said indebtedness has been judicially ascertained, determined, and fixed as hereinafter shown; and whereas the following is a correct statement of said indebtedness:

"Be it ordered by the County Commissioners Court of Presidio County, that the bonds of said county to be called Presidio County courthouse and jail refunding bonds be issued under and by virtue of an act of the Legislature (chapter 108, Session Acts 1895, page 165), providing for the refunding of the indebtedness of counties, and under and by virtue of articles 902 and 903, et seq., Revised Statutes Texas 1895, for the purpose of refunding the indebtedness of Presidio County as same now exists, as shown by the foregoing statement on account of said courthouse and jail bonds hereinbefore described, issued by Presidio County before Brewster, Jeff Davis, Buchel, and Foley counties were cut off from Presidio County. Said bonds shall be numbered consecutively from 1 to 37, inclusive, and shall be of the denomination of $1000 each, aggregating thirty-seven thousand dollars.

"It is also ordered that H. H. Kilpatrick, county judge, be authorized to take and have charge of said bonds pending their investigation by the Attorney-General and upon their approval shall have authority to negotiate their sale, and receive for the county the proceeds thereof."

In pursuance of the order above recited, the refunding bonds thereby authorized were duly issued by Presidio County and placed in the hands of H. H. Kilpatrick, the county judge of said county, with the authority given and for the purposes stated in said order of the Commissioners Court. Upon receipt of the bonds, Judge Kilpatrick carried them to the city of Austin, and after they were duly approved by the Attorney-General of the State of Texas, negotiated a sale of them, whereby they were purchased from the county at their face value by the school board for the school fund of the State of Texas. This sale occurred about November 3, 1900. Its character and the manner in which it was made is shown by the following testimony of Judge Kilpatrick and Millard Patterson. The former testified:

"I was there in Austin as the agent of Presidio County. We had negotiated with the State Board of Education. The old bonds were turned over to the Comptroller, who acted for the State School Board, and he was to cancel them and return them to Presidio County; he

never did return them. He gave an order on the State Treasurer for the money for the new bonds; this money with my consent the State Treasurer, after he received the new bonds, turned over to Millard Patterson, who was there for the old bondholders. The money was paid over at the Treasurer's office. I did not have possession of it. It was mostly carted out the back door, and I think taken to some bank. * * * I had nothing whatever to do with the old bonds. My knowledge of what was done with them is based on information. Some of the new bonds were just exchanged for some old bonds held by the State school fund. The new bonds disposed of there amounted to at least $30,000; that is, there was that much money on their account paid over to old bondholders and creditors. I had nothing to do with the payment of the money realized from the sale of the new bonds, except to see that Presidio County got the proper credit for the amount. There was a balance due the old bondholders which was paid by draft on the treasurer of Presidio County, which draft was given by Kilpatrick to Patterson. We had arranged with the State Board of Education, fixing the price they were to pay for the new bonds; State Treasurer was to take price of new bonds and pay same to holders of old bonds, and they were to surrender to Treasurer old bonds for cancellation."

And the latter (Mr. Patterson) testified: "The Presidio County refunding courthouse and jail bonds were disposed of in Austin, about the 3d day of November, 1900. There were thirty-seven of them. At the time the refunding bonds mentioned were issued, Presidio County was indebted on account of the old courthouse and jail bonds to the State permanent school fund, to the City National Bank of Paducah, to Webb M. Ruby, to Chas. F. Cook, to A. White, and to the Noel Young Bond and Stock Company. In the settlement which was held at Austin I represented every one of the holders of the bonds except the State permanent school fund. Some of the interest coupons on the old bonds had been reduced to judgment; when the refunding courthouse and jail bonds were approved by the Attorney-General, Judge Kilpatrick sold them to the State school fund. The State Board of Education would not take these bonds unless in the transaction all of the old bonds and judgments I have mentioned were canceled. The amount of the old bonds held by the State school fund was deducted from the amount to be paid for the refunding bonds, and the State Treasurer was directed to pay over the balance of the amount for the refunding bonds issued by Presidio County, to me, with the consent of Judge Kilpatrick, who represented Presidio County. The amount so paid to me by the State Treasurer for Presidio County, on account of the refunding bonds, was over $30,000. * * * At the time the money was paid over to me it was paid in cash, part silver, part paper. The cashier of the American National Bank was present, and he received the money for me directly from the State Treasurer, and carried it down to the bank. No person had anything to do with the money after it left the Treasurer except myself, the said cashier, and Webb M. Ruby. The City National

Bank and Webb M. Ruby were holders of the old Presidio County bonds. Ruby owned Nos. 1 to 31, City National Bank 31 to 35 and 41 to 45. The new bonds were bought in my presence by the State school fund or Board of Education. The old bonds were in existence, and after the new bonds were issued the State school fund or State board would not buy them until the old bonds and judgments were canceled. The State board insisted that in the transaction in which the new bonds were taken by the school board the old bonds should be canceled and delivered up. My recollection is that I in person turned every one of the old bonds, not already held by State school fund, over to the Comptroller of Texas. I turned them over to be canceled before the State Treasurer paid me the money. The old bonds were turned over to the Comptroller and he gave an order on the State Treasurer to pay the money over. But the new bonds had been approved by the Attorney-General before the old bonds were turned over and delivered to the Comptroller. Judge Kilpatrick was present when the money was paid to me. The whole matter of the cancellation of the old bonds and the reception of the money represented by the new bonds occurred on the same day. The old bonds were turned in to the Comptroller after the calculation was made as to the amount to be paid Presidio County for the new refunding bonds, and after they were turned in the State Treasurer was notified of the amount to be paid me on account of the old bonds held as I have stated, and the two judgments against Presidio County; and the State Treasurer paid the money to me as I have stated. None of the money was ever in possession of Judge Kilpatrick, but was paid to me by the State Treasurer under the direction of Kilpatrick as the agent and representative of Presidio County. * * * All the money received by me was accepted by me and applied to the payment and liquidation of indebtedness held by me against Presidio County, represented by the judgments and the old courthouse and jail bonds. All this was done under the immediate supervision and sanction and with full knowledge and consent of H. H. Kilpatrick, as the agent and representative of Presidio County."

The amount of money received in this transaction by Mr. Patterson lacked $5955.10 of discharging the amount of indebtedness due by Presidio County on the bonds held by him; and for that sum, Judge Kilpatrick gave Mr. Patterson a draft on the treasurer of the county.

S. E. Walker is and has been county treasurer of Presidio County since 1892. During the year 1900 he received as commissions, by virtue of his office, the sum of $785, and during that year he received no fees other than commission. He twice, before the institution of this suit, presented to the County Commissioners Court of Presidio County, for allowance and payment, his claim for the money upon which this suit is based, which both times was rejected and payment refused.

*Conclusions of Law.*—The appellee, as county treasurer, was, during the term of his office, entitled to receive and disburse the funds of Pre-

sidio County, and it was not within the power of the Commissioners Court, nor any officer or agent of the county, to deprive him of this official right and duty. He also had the right to his commissions upon money he was entitled to the custody of, and on funds which of right should have been in his possession and disbursed for the county. Waller County v. Rankin, 35 S. W. Rep., 876; Beard v. City of Decatur, 64 Texas, 7; Bastrop County v. Hearne, 70 Texas, 563; Wall v. McConnell, 65 Texas, 397; Trinity County v. Vickery, 65 Texas, 397; Llano County v. Moor, 77 Texas, 515.

The compensation of a county treasurer for the discharge of his official duties is the commissions on money received and paid out by him, and it can not exceed $2000 annually. His salary, which is an incident to and runs with his office for its entire term (Brown v. Galveston Wharf Company, 92 Texas, 524), is derived solely from such commissions.

There can be no question that the bonds were sold and the money, to the extent of $30,000, paid out of the State school fund for them. The prime object of the county in their issue was to sell them, and, with the money realized from the sale, pay off and discharge her indebtedness. This object was attained. Here the pertinent inquiry is, as it was in the case of Waller County v. Rankin, "did the money realized from the sale of the bonds belong to the county?" If it did, appellee by virtue of his office was entitled to its custody. The bonds were not issued to the holders of the old bonds, or with the intention or any agreement that they should be taken in exchange for them. They belonged to Presidio County until they were sold, and when sold the money realized from the sale belonged to her and the appellee was entitled to have it paid into his hands. He was prevented from exercising this right by the county's agent paying it directly to the agent of the holders of the old bonds. It was not money of the State school fund after the board of education had paid it for the new bonds, but was the money of Presidio County and as such was received by the holders of the old ones in payment and liquidation of the debt evidenced by them.

The question in this case is the same as it was in the case of Farmer v. Aransas County, 21 Texas Civil Appeals, 549, in which the court stated the vital question to be: Did Aransas County receive, or was it entitled to receive, $20,000 in cash from a sale of its bonds? The principles of law governing each are alike the same, the facts from which the question is determined only are different. In that case the orders of the Commissioners Court show that the new bonds were issued for the purpose of refunding the old, and the testimony establishes that the old bonds were redeemed by Oldham with *his own money,* and that he received for his services in redeeming them new bonds of the county equal in amount to the face value of the bonds redeemed. There was in fact no sale of the new bonds by the county, but merely a delivery of them to Oldham in consideration of his surrendering the old ones to the county. In the transaction the county neither received nor was

entitled to receive any money, and consequently could not pay out money it never received nor was entitled to.

In this case the old bonds were owned by different parties; the new bonds were issued for the purpose of raising money with which to redeem them; they were sold to the State Board of Education, who paid the money to Judge Kilpatrick, who had authority to negotiate the sale, and upon his order the money received from the sale was paid to Millard Patterson, the agent of the old bondholders, in liquidation of· the old bonds.

· This case, as to the right to commissions, is analogous to Claridge v. Lavenburg, 7 Texas Civil Appeals, 155. In that case Claridge was the administrator of the estate of Dorgan, which was insolvent, there being no property belonging to the estate, except land incumbered by a mortgage in favor of Lavenburg, who was the owner and holder of a claim against the estate amounting to $9000, secured by a mortgage on the land and approved as a claim of the third class. On application of Lavenburg, the court ordered the land sold to satisfy the mortgage and costs of probate proceedings. The land was sold by the administrator and bought by Lavenburg for $12,000. The sale was reported to the court and confirmed, and the administrator ordered to make title to the purchaser on his complying with the terms of sale. The administrator tendered a deed to Lavenburg and demanded the purchase price, which he declined to pay, and demanded that the purchase price be credited on his claim. The administrator refused to deliver the deed. Whereupon Lavenburg applied to the court to compel the administrator to credit the bid on his claim and deliver him the deed, which application was dismissed and Lavenburg appealed to the district court. On appeal, this court held that the administrator was entitled to his commissions for receiving and paying out the money, and could not be deprived of them by Lavenburg claiming the right to credit his bid on the claim due him, but that his bid less the administrator's commission for receiving and paying out might be credited on his claim.

This shows that the manner in which the money realized from the sale of the new bonds was received and paid out did not deprive appellee as treasurer of Presidio County of the right to his statutory commissions.

· We do not think that there is any merit in appellant's assignment of error which complains that appellee should not have recovered interest on the amount due him upon the ground that it increased the total amount of his commissions for the year 1900 beyond $2000. If appellee has received his money when due it would not have exceeded the sum allowed him by statute. By law it was his, and where a county illegally withholds money belonging to another party, interest is recoverable as damages. 7 Am. and Eng. Enc. of Law, 2 ed., 954.

· The judgment of the District Court is affirmed.

*Affirmed.*

· Writ of error refused.