CURTIN v. HARRIS COUNTY et al. (No. 7644.)

(Court of Civil Appeals of Texas. Galveston. April 19, 1918. Rehearing Denied May 9, 1918.)

1. TAXATION 545 — COLLECTORS — COMPENSATION—STATUTE.
Maximum Fee Bill of 1913 (Acts 33d Leg. c. 121, § 1 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 3881–3883, 3887, 3889, 3893, 3897, 3898]), amending Acts 25th Leg. (1st Sp. Sess.) c. 5, § 10 et seq., fixing the maximum amount of fees that may be retained by named officers, did not repeal Terrell Election Law, § 144 (Rev. St. 1911, art. 2986), providing that county tax collector whose salary is fixed by the fee bill shall receive 10 cents for each poll tax receipt issued by him, and a tax collector is entitled to retain such fee in addition to the maximum fixed by the fee bill.

2. TAXATION 549(3) — COLLECTORS — FEES—PREPARATION OF DELINQUENT TAX RULE FEE.
Under Acts 34th Leg. c. 147, § 2 (Vernon's Ann. Civ. St. Supp. 1918, art. 7687b), requiring the county tax collector to prepare delinquent tax rolls in duplicate, and section 3 (article 7688a), providing that he shall be allowed five cents for each and every line of yearly delinquencies entered of said delinquent record or supplement, only one charge can be made for preparation of both original and duplicate rolls.

3. TAXATION 549(3) — COLLECTORS — FEES—AMOUNT—"FEES OF ALL KINDS."
Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3881, 3883, 3889, 3893–3895, 3897, fixing maximum amount of "fees of all kinds" that may be retained by named officers, a county tax collector is not entitled to receive and retain as his own, in addition to the amount allowed by the foregoing sections, the compensation provided by Acts 34th Leg. c. 147, §§ 2, 3 (Vernon's Ann. Civ. St. Supp. 1918, arts. 7687b, 7688a), for making up delinquent tax rolls and collecting delinquent taxes, such compensation being included within the term "fees of all kinds," used in article 3881.

Appeal from District Court, Harris County; A. R. Hamblen, Special Judge.

Suit by Harris County against H. M. Curtin, in which the state intervened, and in which defendant filed a cross-action against plaintiff. From the judgment rendered Curtin appeals. Affirmed in part and reversed and rendered in part.

Baker, Botts, Parker & Garwood, of Houston, for appellant. B. F. Looney, J. C. Wall, and G. B. Smedley, all of Austin, for the State. John H. Crooker and Fisher, Campbell & Amerman, all of Houston (B. F. Louis, of Houston, of counsel), for appellee Harris County.

GRAVES, J. This case involves a construction of various statutes relating to what may be both received and retained by a county tax collector in return for his services and by virtue of being such officer. Because in the main it clearly and succinctly presents the issues, and is conceded by the other litigants to be a correct general statement, the following summary of the nature

and result of the suit, with very slight changes, is taken from appellant's brief:

Harris county, through its district attorney and county attorney, filed this suit against H. M. Curtin, formerly tax collector of Harris county, for the recovery of certain moneys which were alleged to be due by Mr. Curtin as excess fees of office. The state of Texas, through the Attorney General, intervened, claiming a portion of these moneys to be due the state.

Mr. Curtin became tax collector of Harris county in April, 1917, for the purpose of filling an unexpired term, and held the office from the date of his appointment until November of the same year. The specific items involved in the litigation are as follows:

First. Curtin retained a 10-cent fee each for the issuance of poll tax receipts, as provided by section 144 of the Terrell Election Law. The county contends that that section of the Terrell Election Law was repealed and abrogated by the Fee Bill of 1913; that, therefore, Curtin was not entitled to retain this commission for issuing poll tax receipts. The amount of this item is $112.

Second. Curtin prepared a supplemental delinquent tax roll for the county, under the act of 1915 (House Bill No. 40), and the county paid him therefor five cents per line, issuing him in payment a voucher on the county's general funds for $2,529.20. The county now contends that it should recover this sum from Curtin, because, under the Maximum Fee Bill Act of 1913, he could only retain $4,250 per annum as fees of office, and that, therefore, this sum paid him by the county for making up the delinquent tax roll should be returned to the county as excess fees.

Third. Curtin retained 5 per cent. for the collection of delinquent taxes due the county and subdivisions of the county. These taxes were retained by him under section 3 of the act of 1915, allowing collectors 5 per cent. for collecting delinquent taxes. The county contends that this commission should be returned to it as excess fees of office; that it was not the intention of the act of 1915 to allow the fees provided therein in addition to the maximum compensation allowed by the fee bill. The amount of this 5 per cent. commission for collecting delinquent taxes claimed by Harris county is $2,123.94.

Fourth. Curtin collected certain delinquent taxes due the state of Texas upon which he retained a 5 per cent. commission. The state of Texas intervened, claiming that these commissions were wrongfully retained by Mr. Curtin, on the theory that he had not complied with the requirements of the act of 1915, in many respects, under which statute he claimed the right to retain these commissions, and because of his noncompliance the commissions could not be charged by him. The amount of the 5 per cent. commissions involved in the controversy with the state is $1,174.97. Harris county made the contention that if these commissions were really earned under the Act of 1915, that they should be recovered by the county as excess fees. The trial court held they were not earned in the first instance; that, therefore, Curtin was not entitled to retain them; and that the state was entitled to judgment for the amount of these commissions that had been retained.

Fifth. When Curtin prepared the delinquent tax roll for which the county paid him $2,529.-20, he prepared at the same time the duplicate rolls required by the statute, which were filed with the comptroller, and he presented his bill to the county for five cents per line for the original and duplicate rolls. The county paid him five cents per line for the original roll, and this is the sum for which it recovered judgment

as excess fees, but declined to pay him five cents per line for the duplicate roll.

Curtin, in a cross-action, sought judgment against the county for this five cents per line for the duplicate roll, the amount involved in this cross-action being $2,529.20.

The trial court made the following findings, embodying them in the judgment of the court:

"(1) That under the Fee Bill of 1913 the county tax collector can, in no event, retain in excess of $4,250 for his services rendered in that capacity.

"(2) That the fees prescribed for issuing poll tax receipts and for making out unrendered tax rolls are a part of the income of the office, and are not additional compensation, and are not compensation to be retained by the tax collector in addition to the maximum allowed him by the act of 1913.

"(3) That the 5 per cent. allowed the tax collector under the act of 1915 is a part of the income of the office, subject to the provisions of the maximum salary allowed by the act of 1913.

"(4) That before the tax collector is entitled to receive the 5 per cent. for delinquent taxes as provided in the act of 1915, he must substantially perform all of the duties of said act imposed upon him, and the mere mailing of a postal card to a small percentage of the delinquent taxpayers is not sufficient; in other words, the 5 per cent. claimed by the tax collector has not been earned as a fee of office because all of the provisions of the act of 1915 were not substantially complied with by him.

"It is therefore ordered, adjudged, and decreed by the court that the plaintiff Harris county do have and recover of the defendant H. M. Curtin $2,259.20, which is the compensation collected by H. M. Curtin for the preparation of supplemental delinquent tax roll, and the further sum of $112, which is the sum of money received by said Curtin as fees of office for issuing poll tax receipts, and the further sum of $2,123.94, which is the sum of money that was received by said Curtin as 5 per cent. upon delinquent taxes, other than state taxes, collected by him as fees of office during his incumbency in office. The total sum adjudged Harris county against the defendant Curtin being $4,765.14, and that this judgment bear interest from December 1, 1916, at the rate of 6 per cent. per annum.

"And it is further ordered, adjudged, and decreed by the court that the state of Texas do have and recover of the defendant H. M. Curtin the sum of $1,174.97, which sum is 5 per cent. upon delinquent taxes collected by said Curtin for the state of Texas during his incumbency in office, and that this judgment bear interest at the rate of 6 per cent. per annum from December 1, 1916, for all of which let execution issue.

"It is further ordered, adjudged, and decreed by the court that plaintiff Harris county take nothing herein on its claim for the $1,174.97 item decreed to the state.

"It is further ordered, adjudged, and decreed by the court that the defendant Curtin take nothing in his cross-action against Harris county, in which he seeks judgment for five cents per line for the duplicate supplemental delinquent tax roll, prepared by him during his incumbency in office."

The judgment so rendered below is now before this court upon appeal of the former tax collector.

We have given careful consideration to each position taken in his general attack upon the trial court's judgment, but find fault with it only in its denial of a recovery to appellant for the $112 retained by him for the

issuance of poll tax receipts, and in its corresponding finding that he could not retain that much in excess of the $4,250 maximum allowed him under the amended fee bill of 1913; we therefore sustain his first assignment raising the issue as to that item, and overrule all others. In thus announcing the conclusion reached, it is not thought essential that a greatly extended statement of the considerations, upon which it is based be made.

[1] We think the right of the collector to retain this sum for poll tax receipts and certificates depends alone upon whether or not the amendment of the Maximum Fee Bill of 1913, embodied in chapter 4, tit. 58, of Revised Statutes (Vernon's Sayles' Ann. Civ. St. 1914), repealed section 144 of the Terrell Election Law, now article 2986, Revised Statutes, expressly allowing it; in other words, since article 2986 previously stood apart by itself, and neither was included within nor was any express reference made to it or its subject-matter in the amended fee bill of 1913, it still remains so separate and distinct, and Mr. Curtin is entitled to retain the fees collected under it, unless this act of 1913, by necessary implication, repealed it.

This is indeed the position of appellee Harris county, although it then insists that such repeal took place. The appellant, however, while denying that an implied repeal resulted, further contends that, even if these fees specified in article 2986 are such as would otherwise come within the purview of the fee bill, since they are not in fact included within its provisions, but are provided for in a different title, that relating to elections, they are consequently expressly allowed to him under article 3924, Revised Statutes of 1911, reading as follows:

"Any other fees of office not embraced within this title, but otherwise provided for, shall not be affected by the provisions hereof."

But this court, in construing that article in the recent case of County of Harris v. M. F. Hammond, 203 S. W. 445 (No. 7635), and not yet officially reported, held that, although now embraced within the same chapter and title, it was not intended to limit or affect the provisions of the maximum fee bill. It was there said in part:

"Article 3924, above quoted, was incorporated in the Revised Statute of 1895 in the title and chapter fixing fees of officers. Its obvious purpose in the statute in which it was placed was to avoid any question as to the right of officers to collect fees not embraced in the chapter in which it was incorporated, but otherwise provided for. The schedule of fees fixed in that chapter does not include fees of officers authorized by provisions of the Criminal Code of Procedure and statutes regulating other matters, both civil and criminal. We think it clear that when the codifiers, in arranging the title for the Revised Statutes of 1911, placed the maximum fee bill under the same title with the statute fixing the fees which officers were authorized to collect, they had no intention of applying article 3924 to the provision of the maximum fee bill, and, if they had so intended, the placing of the two statutes under the same title could not be given that effect."

The opinion in that case is referred to for a more extended discussion of this court's view as to the purpose of that statute.

We accordingly return to the question of the implied repeal of article 2986, allowing this poll tax fee. As already indicated, it was originally passed in 1905 as section 144 of the Terrell Election Law, but now appears under the number given in title 49, relating to elections, and, after providing that tax collectors generally shall be paid a specified amount for each poll tax receipt and exemption certificate issued, further recites:

"Provided, that collectors, whose salaries are fixed by what is known as the fee bill, shall receive ten cents for each poll tax receipt and certificate of exemption issued by him, and such fees shall be ex officio and not accountable under said fee bill."

The "fee bill" referred to in this statute at the time of its passage in 1905 meant the act in relation to fees of office then in force; that is, the act of 1897, which, as stated, was amended in 1913. when it became what is now known as the Maximum Fee Bill, and was embraced within present chapter 4, tit. 58, Revised Statutes. At that time, however, the poll tax statute of 1905—that is, section 144 of the Terrell Election Law—had been carried forward into the Revised Statutes, and then appeared therein, as it still does, as article 2986. Moreover, both pieces of legislation throughout their history have appeared under different titles, and still do, the poll tax statute being a part of the title relating to "Elections," while the fee bill is now and has always been a part of that relating to "Fees of Office." Under the amendments of 1913 the fee bill in substance provides: "Hereafter the maximum amount of fees of all kinds that may be retained by any officer mentioned in this section shall be as follows;" and the maximum amount is then provided for, its various terms being general in form and character.

So that, when looking to determine whether this subsequent fee bill as amended repealed by implication a pre-existing section of the Terrell Election Law, we are confronted with the fact that the two enactments have always been separate and distinct parts of different titles in the body of our statutes; that they neither regulate the same specific subject nor carry a like form or character; that the later enactment is general and positive in effect, while the prior one is particular and expressed in negative terms; that not only does the amended fee bill make no direct or express reference to the pre-existing statute allowing this 10 cents each for poll tax receipts and certificates, as has above been mentioned, but there was, further, no attempt made through any of its provisions to amend or in any way change the poll tax statute, nor was any language used from which the implication would arise that the Legislature had any intention of repealing such prior provision of the Election Law, the existence of which it presumably

had in mind when it later came to amend the fee bill.

Moreover, there is neither unavoidable inconsistency nor necessary repugnance between these statutes. Under the fee bill the express provision is that all amounts received by such officer, as fees of his office, besides those which he is allowed to retain under that act, shall be paid into the treasury. Under article 2986, in an entirely different title and chapter, dealing with an entirely different subject, with reference to elections, the Legislature allows to the collector of taxes the sum in dispute, not as fees of office, but made expressly ex officio, and not accountable under the fee bill; that is, the older law, negative in its character, expressly excepts from the fee bill the ex officio fees allowed the collector for poll tax receipts and exemption certificates; whereas the latter one, general in its form and nature, neither makes express reference to this special statute, nor undertakes to repeal any law in particular, but merely amends certain articles of an entirely different title relating to another subject.

Under the conditions recited, to hold that article 2986 was so impliedly repealed would, it seems to us, do violence to the well-settled rule of construction that repeals by implication are not favored. Cole v. State, 106 Tex. 472, 170 S. W. 1036; Sutherland on Statutory Construction, § 138. Our conclusion is that there was no such repeal, and that the tax collector was entitled to retain the $112 involved.

As to the other items than that for poll tax receipts adjudged adversely to him below, appellant's position is that, under the provisions of the act of 1915 (House Bill No. 40, Acts 1915, c. 147, p. 250), and particularly sections 2 and 3 thereof, he was entitled to both receive and retain them as his own, in addition to the maximum amount allowed him by the fee bill of 1913, and was not required to account for any of them to the county or state.

It was undisputed that he received and retained the maximum amount of compensation allowed him under the fee bill as tax collector, and paid to Harris county some excess fees, after paying all of his expenses of office and deputy hire. It was also conceded that he fully performed the services entitling him to charge and receive the sum of $2,529.20 for the preparation of the original delinquent tax roll, the only dispute over that item being as to his right to retain and not account for it, the county further contending that in no event was he allowed to charge for the duplicate roll.

This statute of 1915, invoked by appellant, imposed additional duties upon county tax collectors, among them, in certain instances, to make up delinquent tax rolls; it prescribed in detail the method of, and made their performance mandatory, and then fixed penalties for failure to perform such new duties.

Section 2, among other details not material to this inquiry, requires that these delinquent rolls be prepared in duplicate, one copy to be filed in the county clerk's office of the particular county, the other to be furnished to the Comptroller of Public Accounts. The only provision in the Act with reference to compensation for this work is found in that part of section 3 (Vernon's Ann. Civ. St. Supp. 1918, art. 7688a) reading as follows:

"The tax collector shall, in addition to the compensation and costs now allowed by law, be entitled for making up the delinquent record or supplement thereto where necessary under this act, the sum of 5 cents for each and every line of yearly delinquencies entered on said delinquent record or supplement, such compensation to be paid out of the general fund of the county upon the completion of said record or supplement. The tax collector shall also receive a commission of 5 per cent. on the amount of all delinquent taxes collected in addition to the commissions now allowed him by law."

[2] It will be noted that this provision does not limit the 5 cents per line of compensation allowed to the preparation of either the original or duplicate rolls, nor is the duplicate even mentioned therein, and the proof here showed that the duplicate in this instance was merely a carbon copy of, and, of course, made at the same time with, the original. It is not a thing unthinkable, but rather a frequent occurrence, that new duties are required of county officers for which no compensation is provided, many illustrations of which might be mentioned. This compensation is for every line of yearly delinquencies, and the entry of the line on the delinquent record or supplement, a single service, is what the payment is provided for. If the collector is allowed the same amount for the duplicate also, it appears to us that he would be collecting for twice as many yearly delinquencies as in fact existed. We think the plain import of the language used indicates the Legislature's intention to allow but one charge for the preparation of both the original and duplicate rolls, and, if it had intended otherwise, the purpose both would and could have been so expressly declared by merely adding some such clause as, "and 5 cents per line for the duplicate." In what seems to us to be an analogous case (E. Hallman v. R. F. Campbell, 57 Tex. 54), the Supreme Court held it will not be inferred that the Legislature, although as in this instance requiring the additional service, intended by implication to allow fees therefor not expressly provided.

Concerning the items claimed for the collection of both state and county delinquent taxes, the proof showed a failure to comply with a number of the detailed requirements of the act of 1915, supra, which appellant admits, but insists that there was such a substantial compliance with its provisions as entitled him to receive and retain the amounts sought. After examining the statement of facts, however, we think the evidence amply sustains the trial court's fourth find-

ing of fact in reference to these 5 per cent. commissions, which concludes as follows:

"The 5 per cent. claimed by the tax collector has not been earned as a fee of office because all of the provisions of the act of 1915 were not substantially complied with by him."

Moreover, we deem it unnecessary to set out the evidence showing in what respects he failed to meet the requirements of the statute, or to elaborate the considerations upon which we approve the trial court's conclusions of both fact and law upon this phase of the case, in view of our further conclusion that it was the tax collector's duty to turn in and account for these commissions, even if they had been fully earned, which is next stated.

[3] It is our view that, even if appellant had been entitled to charge separately for both the original and duplicate delinquent rolls, and had further so complied with the requirements of the act of 1915 as otherwise entitled him to receive the amounts claimed for collecting delinquent taxes, neither of which conditions have we found existed, he would still not have been entitled to the judgment sought as to any of these items, because they were all such fees of office as came within and were subject to account according to the provisions of the amended fee bill, the maximum compensation under which he had already retained. We are unable to agree with appellant that the above-quoted section 3 of the act of 1915 contemplates the allowance of the amounts therein specified in addition to the maximum sum provided for in the fee bill but rather that the terms "compensation" and "commissions" now allowed by law, as there used, meant the same thing and had sole reference to the provisions of article 7654, Revised Statutes, which fixes the compensation of tax collectors. This latter article had been in effect for a number of years, and not only used the word "compensation" in designating the return to such officers for the collection of taxes, but provided the only commissions allowed them for that service at the time this act of 1915 became effective. Furthermore, the fact must not here be lost sight of that this latter act was an amendment of the tax statutes, and not the fee bill, and that its terms did not authorize the collector to retain any sum whatever. In other words, we think the Legislature merely intended thereby to allow a compensation to the collector of 5 cents per line, and 5 per cent. on delinquent taxes, in addition to the compensation fixed by article 7654.

Nor does it seem to us the further conclusion can be escaped that all compensation, commissions, and fees of the tax collector, other than those for poll tax receipts, supra, are to be considered in determining the salary he is to receive under the fee bill. That legislation, in too unmistakable a way, emphasizes and reiterates that such was its evident purpose. As indicative of that intent,

we make the following partial abstract of some of the provisions of the amendment of 1913:

"Art. 3881. Hereafter the maximum amount of fees of all kinds that may be retained by any officer mentioned in this section (article) as compensation for services shall be as follows," etc.

"Art. 3883. In counties containing a city of over twenty-five thousand inhabitants, * * * the following amount of fees shall be allowed, viz.: * * * Collector of taxes, an amount not exceeding twenty-seven hundred and fifty dollars per annum," etc.

"Art. 3889. Each officer named in this chapter shall first, out of the fees of his office, pay or be paid, the amount allowed him, under the provisions of this chapter, together with the salaries of his assistants or deputies. If the fees of such office collected in any year be more than the amount needed to pay the amount allowed such officer and his assistants and deputies, same shall be deemed excess fees, and of such excess fees such officer shall retain one-fourth; and in counties * * * in which county the population exceeds 38,000, until such one-fourth amounts to the sum of fifteen hundred dollars. * * * All amounts received by such officer as fees of his office besides those which he is allowed to retain by the provisions of this chapter, shall be paid into the county treasury of such county."

"Art. 3893. * * * In cases where the compensation and excess fees which the officers are allowed to retain shall not reach the maximum provided for in this chapter, the commissioners' court shall allow compensation for ex-officio services when, in their judgment, such compensation is necessary: Provided, such compensation for ex-officio services allowed shall not increase the compensation of the official beyond the maximum amount of compensation and excess fees allowed to be retained by him under this chapter.

"Art. 3894. It shall be the duty of those officials named in articles 3881 to 3886, and also the sheriffs, to keep a correct statement of the sums coming into their hands as fees and commissions," etc.

"Art. 3895. Each officer mentioned in articles 3881 to 3886, and also the sheriff, shall, at the close of each fiscal year, make to the district court of the county in which he resides a sworn statement showing the amount of fees collected by him during the fiscal year," etc.

"Art. 3897. At the close of each month of his tenure of such office each officer whose fees are affected by the provisions of this act shall make, as a part of the report now required by law, an itemized and sworn statement of all the actual and necessary expenses incurred by him in the conduct of his said office," etc. Vernon's Sayles' Ann. Civ. St. 1914.

We think the term "fees of all kinds," thus used in article 3881, embraces the kinds of compensation to the tax collector provided for in sections 2 and 3 of the act of 1915, and consequently such fees are not exempt from the operation of the fee bill; in other words, that the principle applied by our Supreme Court in Austin v. Johns, 62 Tex. 179, and Ellis County v. Thompson, 95 Tex. 22, 64 S. W. 927, 66 S. W. 48, where commissions allowed a city attorney for collecting money due the city, and a county clerk on fines collected by him, were held to be included in this identical term "fees of all kinds," used in the fee bill then in force, is equally applicable here.

Nor is this conclusion in conflict with our

other holding in the County of Harris v. Hammond Case, supra, that "charges" allowed a sheriff for the safe-keeping, feeding, and care of prisoners in jail are not included within the same language. The distinction is clearly drawn by the Chief Justice in the Hammond Case, and that opinion is referred to without further discussion here.

In our opinion the only error in the judgment below was the denial of a recovery to appellant of the $112 for poll tax receipts and exemption certificates. As to that item it will be reversed, and judgment here rendered for appellant, but in all other respects will be affirmed.

Affirmed in part. Reversed and rendered in part.