### CHARLTON et al. v. HARRIS COUNTY.
### (No. 7972.)

(Court of Civil Appeals of Texas. Galveston. March 2, 1921. Rehearing Denied March 17, 1921.)

1. **Counties** ⬤⟷74(3)—**Statute, fixing maximum commissions of treasurer, does not include compensation as treasurer of drainage and navigation districts.**

Rev. St. 1911, arts. 3873–3875, providing that the county treasurer shall receive commissions on moneys received and paid out to be fixed by the commissioners' court, and that the commissions allowed shall not exceed $2,000 annually, when construed in the light of their history and in connection with the maximum fee bill (Acts 1897, Sp. Sess. pp. 9, 43, as amended in 1913 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 3880–3926]) and also in connection with Vernon's Sayles' Ann. Civ. St. 1914, arts. 2608, 5988, 5960, relative to the county treasurer's compensation as treasurer of drainage and navigation districts, apply only to commissions for handling strictly county funds, and does not prevent additional compensation as treasurer of drainage and navigation districts.

2. **Counties** ⬤⟷75(4)—**Commissions retained by treasurer not voluntarily paid so as to prevent recovery.**

Commissions collected and retained by the county treasurer in his capacity as treasurer for drainage and navigation districts, if illegally retained, are not voluntarily paid by the county so as to bar their recovery.

3. **Limitation of actions** ⬤⟷22(8)—**Retention of illegal commissions is official malfeasance, to which four-year limitation applies.**

The collection and retention by the county treasurer of commissions to which he is not entitled constitutes official malfeasance, giving rise to an action on his bond to which the four, and not the two, years' statute of limitations would apply.

Appeal from District Court, Harris County: W. E. Monteith, Judge.

Action by the County of Harris against James Charlton and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Geo. L. Charlton and Carothers & Brown, all of Houston, for appellants.

Louis, Campbell & Nicholson, of Houston, for appellee.

GRAVES, J. James Charlton, as county treasurer for Harris county, collected and retained as his commissions for each of the years 1915 to 1918, inclusive, the sum of $2,000. In addition, in his capacity as treasurer of the various drainage and navigation districts within the county, he collected and retained during the same four-year period—part of it from one and part from another of such districts—as his compensation for the latter service an aggregate amount of $3,248.52. In the court below the county recovered judgment for this $3,248.52 against him and his bondsmen, and they appeal.

[1] Appellants contend that Revised Statutes, article 3875, providing that, "The commissions allowed to any county treasurer shall not exceed $2,000.00 annually," merely prescribes the maximum annual amount that may be allowed the treasurer by the commissioners' court for handling strictly county funds, and neither applies to nor precludes retention by him of compensation received during the same year from drainage and navigation districts for like service with reference to their funds. In our opinion this position is correct. The county treasurer is not now, nor has he ever been, included in what is known as the Maximum Fee Bill, which fixes a limitation upon the fees of other officers. See original form of that measure as passed in 1897 (Acts S. S. 1897, pp. 9, 43) as well as amendment of 1913 (ch. 4, tit. 58, Vernon's Sayles' Statutes 1914).

Article 3875, relating to treasurers, must therefore be considered as standing apart.

⬤⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

When that is done in the light of its history and of present foregoing articles 3873 and 3874, its terms, simple and plain as they are, seem to us to clearly indicate that it was never intended to be other than a mere limitation upon the power conferred by the Legislature upon the commissioners' court to fix the treasurer's commissions on purely county business. The office was created by an act approved May 13, 1846, under which the Legislature, instead of itself fixing the holder's compensation, delegated that authority to the county court in this language:

"The county treasurer shall receive and may retain in his hands, such commission, not exceeding five per centum, upon the amount received and disbursed by him, as the county court in their discretion may allow." Gammel's Laws of Texas, vol. 2, p. 1646; Acts 1846, p. 340, § 9.

By preceding section 3 of the same act it had been made the treasurer's duty to receive all moneys belonging to the county, and pay and apply them as required by law.

Then in 1876 a law regulating the fees of different officers was passed, that portion relating to county treasurers being this:

"Sec. 15. County treasurers shall receive the following fees: The county treasurer shall receive not more than two and one-half per cent. on all sums received by him, and not more than two and one-half per cent. on all sums paid out by him; but shall receive not more than one per cent. for receiving and paying out monies belonging to the school fund: The commissions of the county treasurer shall be fixed by the County Commissioners' Court, within the limits prescribed in this act; provided, that the county treasurer shall receive no commissions for receiving money from his predecessor or for paying over money to his successor in office; provided further, that the compensation allowed to any county treasurer shall not exceed three thousand dollars per annum in any county of this state." Acts of 1876, p. 292; Gammel's Laws of Texas, vol. 8, p. 1128.

While this quoted section 15, after being split into three parts was carried into the Revised Statutes of 1879 as articles 2403, 2404, and 2405 (the last-mentioned one being the portion dealing with the $3,000 limitation), there were only two material changes in the law as therein declared then or since that time:

First, section 1 of an act approved April 7, 1879, amended article 2405 by reducing the specified $3,000 maximum to $2,000, the form of the amendment being in the precise language of present article 3875, quoted above. Acts 1879, chapter 69, p. 79; Gammel's Laws of Texas, vol. 8, p. 1379.

Second, in 1891, by amended section 47 of the School Bill (Acts of 1891, p. 147), the power of allowing compensation for handling school funds was taken away from the commissioners' court and exercised by the Legislature direct, as it has ever since been. See present article 3874, already referred to. In other respects the provisions of this original section 15 have come on down without material change, and are now embodied in present article 3873, cited supra.

So that the law affecting the fees of a county treasurer stands substantially to-day as it was thus enacted in 1876, except that the commissioners' court may now neither allow such officer commissions on purely county funds of whatever kind in excess of $2,000 per year, nor at all on school funds.

Bearing in mind these two respects in which alone it has been changed, a reading of this statute as so first passed, irresistibly, it seems to us, impresses the idea that the Legislature was doing nothing more than conferring a power upon the commissioners' court, and then attaching a limitation to its exercise by that body. The solution of the meaning and purpose of the measure is found in its proviso, that is, the restriction was evidently intended to apply to the commissioners' court, and not to what the Legislature itself in the future might see fit to do. In other words, having in the main body of the article delegated to the local authority the power of fixing their treasurer's compensation, the last proviso—which, as above stated, has been reproduced as present article 3875—was added simply as a curb against an excessive exercise of the prerogative granted, nothing more. And if that was the meaning of the proviso then, it is now that of its counterpart, the statute under construction.

We have been cited to no Texas decision holding to the contrary. Unlike the one before us, the cases cited and relied upon by the appellee fall under one or the other of two classes: they deal either (1) with funds or business belonging to the county as an entirety, or (2) with offices and officers expressly included in the Maximum Fee Bill. Within the first class are Bastrop County v. Hearn, 70 Tex. 563, 8 S. W. 303, Presidio Co. v. Walker, 29 Tex. Civ. App. 609, 69 S. W. 99, and Davenport v. Eastland County, 94 Tex. 277, 60 S. W. 243, while under the second come Ward, Hammond, Curtis, and Jones v. Harris County, reported, respectively, in 209 S. W. 793, 203 S. W. 448, 203 S. W. 453, 209 S. W. 208, as well as Nichols v. Galveston County, No. 6800 in this court, recently decided by the Supreme Court on certified questions, 228 S. W. 547. While therefore neither line of these holdings has any direct application here, we are inclined to think the Supreme Court in the Eastland County Case, which arose after the authority to fix any fees for the treasurer on school funds had been taken away from the commissioners' court, put the same construction we have on the statute here involved, when in the course of a discussion of it this is said:

"The commissioners' court of Eastland county fixed the treasurer's compensation at 2½

per cent. on sums received and on sums paid out. He was entitled to that per cent., not to exceed the sum of $2,000 per annum. * * *

"From these provisions, we conclude that it was the intention of the Legislature to give to the county treasurer $2,000 per annum to be paid out of the fees which might be fixed by the commisioners' court, if such fees should amount to that sum."

Nor do we find any law requiring a county treasurer to pay over to his county any amounts he has collected either from drainage or navigation districts as compensation for the services he has rendered those organizations. As before indicated, not only has the treasurer always been left without the pale of the Maximum Fee Bill, but in a class by himself.

The Legislature, since the comparatively recent origin of that measure in 1897, has been careful to not only specifically enumerate the officers who were to be subject to its provisions, but also to regulate in detail the accounting for, reports concerning, and disposition of the excess fees to be made by them. Under broad definitions of the fees to be affected, it has expressly required the return of three-fourths of the excess therein to the county, and made it a penal offense for an officer subject to the law to neglect the collection of fees in which the county had an interest. Vernon's Sayles' Statutes, arts. 3881 to 3886, 3889; also Penal Code of Texas 1911, arts. 110 to 113, inclusive. The omission of the county treasurer from all such requirements everywhere, and the particular failure to prescribe any such restrictions in the drainage and navigation acts, strongly indicates the legislative purpose to leave him free from them; indeed, when the terms of these last-mentioned acts are looked to emphasis is added to this conclusion.

The Drainage Act, Revised Statutes, article 2608, as amended in 1913, reads, so far as material, as follows:

"The treasurer shall be allowed as compensation for his services as treasurer one-fourth of one per cent. upon all money received · by him for the account of such drainage district and one-eighth of one per cent. upon all moneys by him paid out upon the order of said district." Vernon's Sayles' Ann. Civ. St. 1914, art. 2608.

The applicable part of the Navigation Act, Revised Statutes, article 5988 is this:

"And the treasurer shall be allowed such compensation for his services as such treasurer as may be determined by said commissioners, not exceeding the same per cent. as he is now allowed by the county for his services as county treasurer."

Other provisions in each of these laws require the county treasurer to also serve as treasurer of such districts, and exact of him the giving of an additional and separate bond for that responsibility, while article 5960—part of the Navigation Act—declares that the duties therein imposed upon the county officers "are made a part of the legal duty of said officials, which they shall render and perform without additional compensation, unless otherwise provided herein." Since in the other portions just quoted from the extra compensation—that is, other and different from those allowances to which article 3875 relates—was expressly and affirmatively provided for, it seems clear that, in so far as the county treasurer is concerned, it was intended as such.

We do not think it reasonable to assume that the treasurer would have been required, along with all the other county officers, to report and account for all fees received by him in excess of the small allowance of $2,000, and yet he alone be denied the privilege accorded by the fee bill to all the others of retaining for himself one-fourth of that excess.

[2, 3] These conclusions determine the merits of the appeal, and render discussion of the other questions presented unnecessary. It may not be amiss, however, to add our opinion that, if the amounts so retained by appellant could be held to have belonged to the county, it was not barred of a recovery of them on the ground that they were voluntarily paid by it, as we are advised the Supreme Court has held in Nichols v. Galveston County, and, further that his withholding them in those circumstances would have constituted such official malfeasance as would have given rise to an action on his bond as county treasurer, to which the four, and not the two, years' statute of limitations would have applied.

Believing that the county was without right to the recovery it had, the judgment is reversed, and the cause is here rendered in favor of appellants.

Reversed and rendered.