**CHARLTON, County Treasurer, et al. v. HARRIS COUNTY.** (No. 590.)

(Court of Civil Appeals of Texas. Beaumont. June 27, 1921. Rehearing Denied Oct. 12, 1921.)

**1. Counties** ⊙75(4)—**County held not entitled to recover from treasurer commissions retained for handling school funds.**

In view of the legislative history of Rev. St. 1911, arts. 3873–3875, fixing the fees of the county treasurer for handling the school funds, and his omission from the list of officers mentioned in the maximum fee bill (Rev. St. 1911, arts. 3881–3886), the compulsory collection and wrongful retention of fees by whom are dealt with by Pen. Code 1911, arts. 110–113, the county cannot recover commissions retained by him for handling the school funds, though he also collected and retained, in his capacity as county treasurer from the general funds of the county, $2,000 per year, the maximum commissions allowed him by article 3875; such article being inapplicable to the fees collected from school funds.

**2. Appeal and error** ⊙1166—**Where amount plaintiff may recover is insufficient to confer jurisdiction, trial court's judgment as to such amount will be reversed.**

In a county's action to recover the amount of an alleged shortage in its treasurer's accounts, including fees retained by him for handling the county school fund, to which he

was lawfully entitled, where the amount claimed as shortage relative to county funds proper was insufficient to confer jurisdiction on the trial court, its judgment as to such amount will be reversed.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by County of Harris against James Charlton, county treasurer, and others. Judgment for plaintiff and defendants appeal. Reversed and remanded.

See, also, 228 S. W. 969.

Geo. L. Charlton and Carothers & Brown, all of Houston, for appellants.

E. T. Branch and E. R. Campbell, both of Houston, for appellee.

HIGHTOWER, C. J. The appellee, county of Harris, instituted this suit against appellants, James Charlton, as county treasurer of the county, and also against the sureties on three of his official bonds, to recover $5,772.93 claimed to be due the county by Charlton. The cause was tried before the court without a jury, and judgment was rendered in favor of Harris county, the appellee, and against appellant Charlton and all of the sureties on each of his three bonds, for $1,818.98, which was for the following items:

| | |
|---|---:|
| Commission collected from school fund | $1,001 50 |
| Amount overpaid as interest on bonds | 11 75 |
| A shortage alleged to have occurred somewhere between November 23, 1906, and November 30, 1910, the date being unknown | 229 58 |
| Interest from January 1, 1911, on all such sums | 576 15 |
| Total | $1,818 98 |

It was agreed by the parties in the trial court, and thereupon the trial court found as a fact, that appellant Charlton was the duly elected and qualified treasurer of Harris county from November 23, 1906, to November 30, 1910, and that during that time he, as treasurer of the available and permanent school funds of the county, collected as commissions for handling same the sum of $1,499.02. It was further agreed, and the trial court found, that this amount was collected out of the available school fund, and that, in addition to this, Charlton retained out of the general funds belonging to Harris county commissions in the sum of $2,000 per year for each year during said period. The trial court found further that $497.52 of this amount collected and retained by Charlton for handling the school funds was collected by him in 1908, and that the claim of the county therefor to that extent was barred under the four-year statute of limitation, but that the county was entitled to recover the balance of $1,001.50, as claimed by it, with 6 per cent. interest thereon from January 1, 1911.

The first assignment of error complains of the action of the trial court in allowing a recovery by Harris county for any part of the commissions collected and retained by Charlton for handling the school fund of the county, appellant claiming in that connection that the undisputed evidence showed that he had a legal right to the commissions so collected and retained by him for handling the school funds of the county, in that the $2,000 limitation on the county treasurer's fees does not apply to the fees collected as treasurer of the school fund.

Under this assignment, the proposition is asserted by appellant that article 3875, Revised Statutes, limiting county treasurers' compensation to $2,000, has no application to the fees collected by the county treasurer from school funds for services rendered by him in his ex officio capacity as treasurer of such funds. On the contrary, the counter proposition asserted by the appellee Harris county is that the limitation of $2,000 per annum as the maximum compensation to a county treasurer applies to and includes commissions received by him for handling such school funds, and that such limitation covers any and all fees and commissions received by such officer from any and all sources.

[1] After very careful consideration and much investigation, we have reached the conclusion, though not without difficulty, that appellant's proposition is correct, and that the appellee was not entitled to a recovery against appellant for any commissions collected and retained by him for handling the school funds of Harris county, notwithstanding the fact that he had also collected and retained, in his capacity as county treasurer of the county, from the general funds of the county, the amount of $2,000 for each year while acting as county treasurer.

A decision of the point depends to large extent on the proper construction to be placed on articles 3873, 3874, and 3875, Revised Statutes of 1911, to which we will refer later on in this opinion, but before doing so we will mention, in a brief way, the history of the legislation of this state dealing with the office of county treasurer and the compensation attached to that office.

The office of county treasurer was created by the Legislature of this state in 1846, and the particular portion of that act relating to the compensation of the treasurer was section 9, which was as follows:

"Sec. 9. Be it further enacted, That the county treasurer shall receive and may retain in his hands, such commissions, not exceeding five per centum, upon the amount received and disbursed by him, as the county court in his discretion may allow." Acts 1846, pp. 338-340.

No special mention seems to have been made of school funds, for the reason, probably, that the county court at that time had jurisdiction and control of such funds. Paschal's Digest, arts. 3473, 3477, 3479. In 1876 the Legislature passed an act regulating the fees of officers in general, and that part of the act dealing with county treasurers was as follows:

"Sec. 15: County treasurers shall receive the following fees: The county treasurer shall receive not more than two and one-half per cent. on all sums received by him; and not more than two and a half per cent. on all sums paid out by him; but shall receive not more than one per cent. for receiving and paying out moneys belonging to the school fund. The commissions of the county treasurer shall be fixed by the county commissioners' court, within the limits prescribed in this act: Provided, that the county treasurer shall receive no commissions for receiving money from his predecessor or for paying over money to his successor in office; provided, further, that the compensation allowed to any county treasurer shall not exceed three thousand dollars per annum in any county of this state." Acts 1876, p. 292.

We find that this section 15, above quoted, was carried forward into the Revised Statutes of 1879, as articles 2403, 2404, and 2405. Articles 2403 and 2404 were as follows:

"Art. 2403. The county treasurer shall receive commissions on the moneys received and paid out by him, said commissions to be fixed by order of the commissioners' court as follows: For receiving and paying out moneys belonging to the school fund, not exceeding one per cent.; for receiving all other moneys for the county, not exceeding two and one-half per cent., and not exceeding two and one-half per cent. for paying out the same.

"Art. 2404. The county treasurer shall receive no commissions for receiving money from his predecessor nor for paying over money to his successor in office."

Article 2405, as found in the codification of 1879, reads as follows:

"The commissions allowed to any county treasurer shall not exceed two thousand dollars annually."

We think that article 2405 was intended by the Legislature to follow the provisions of section 15, above quoted, of the act of 1876, because what is printed in the revision of 1879 seems to be an amendment of article 2405, which amendment was enacted by the Legislature on April 7, 1879, and section 1 thereof reads as follows:

"Section 1. Be it enacted by the Legislature of the state of Texas, that article 2405 of the Revised Civil Statutes be amended so as hereafter to read as follows:

"Art. 2405. The commissions allowed to any county treasurer shall not exceed two thousand dollars annually."

Acts 1879, p. 79.

Since it is apparent that this article had not had the number 2405 prior to the codification in 1879, it would seem that the original article 2405 followed section 15, above

quoted, and made the limit that could be allowed to the county treasurer $3,000 instead of $2,000, but that the amended article was printed instead of the article as originally drafted. See chapter 151, Regular Sessions Sixteenth Legislature, Acts 1879, page 166. It is probable that the diminution in amount allowed the county treasurer was brought about by the fact that in 1879 a general school act, in which several radical changes were made, was passed, the act, among other things, authorizing the formation of school districts, and placing the affairs of such districts in the hands of trustees. Article 3725 of the act related in particular to county treasurers. It provided as follows:

"The treasurers of the several counties shall be treasurers of the available public free school fund for their respective counties."

Article 3726 of the act provides:

"The treasurers of the several counties shall be allowed for receiving and disbursing the school fund the fees provided in article 2403."

In 1884 (Laws 1884, c. 25) the Legislature passed another general school bill, which further removed from the commissioners' court the control of school funds. Section 47 of this act reads as follows:

"Sec. 47. The treasurers of the several counties shall be treasurers of the available public free school fund for their respective counties. The treasurers of the several counties shall be allowed for receiving and disbursing the school funds, the fees provided in article 2403, Revised Statutes of Texas." * * *

In 1891 (Acts 1891, c. 96) the Legislature amended section 47 of the act of 1884, and made it read, in so far as material here, as follows:

"The treasurers of the several counties shall be treasurers of the available public free school fund and also of the permanent county school fund for their respective counties. The treasurers of the several counties shall be allowed for receiving and disbursing the school funds one-half of one per cent. for receiving and one-half of one per cent. for disbursing. Said commissions to be paid out of the available school fund of the county."

In the latter part of the act, the Legislature declared that it was intended to prevent county treasurers from collecting double the fees allowed them by law on school funds.

It is easily to be seen from the act that it fixes absolutely the compensation of the county treasurer for handling school funds, and leaves no control whatever in the commissioners' court as to such funds. From the declaration of the Legislature as to its purpose in passing the act of 1891, above mentioned, it would seem that articles 3725 and 3726 of the act of 1879, above mentioned, were construed by the Legislature as taking away from the commissioners' court the power to regulate the commissions to be received by the county treasurer for handling school funds, and that the $3,000 limitation which had theretofore covered all fees received by such officer was reduced to $2,000, because the Legislature had taken away from the commissioners' court the authority to regulate the commissions on school funds. It must be borne in mind that the act of 1891 was not an amendment of article 2403 or article 2405 above mentioned, but was an amendment to the chapters dealing with public education. And we think that when article 2405 was enacted in 1879 it was not intended as a limitation on the power of subsequent Legislatures to fix the compensation of the county treasurer at a sum in excess of $2,000 per annum, and if such had been the intention of the Legislature, it could not have availed to have prevented such subsequent legislation. We think that by this article 2405, one thing only was meant by the Legislature, and that was that the commissioners' court, in exercising such discretion as was allowed it by article 2403, could not make to the county treasurer an allowance exceeding $2,000 as to matters over which that court was given control. Of course, the act of 1891, being subsequent to the act of 1879, would control. And it is our conclusion that after the act of 1891, county treasurers undoubtedly had the right to collect and retain the commissions allowed them by law for handling school funds, even though such commissions amounted to more than $2,000. We have been unable to find any change in the law since the act of 1891 up to the time this suit was instituted, touching the matter here under consideration, except such change, if any, as was made in the codification of 1895 and the codification of 1911.

Article 2403 of the Revised Statutes of 1879 seems to have been carried forward into the revision of 1895 as article 2467, and article 2404 of the revision of 1879 was carried forward as a part of article 2467 of the revision of 1895. It seems that the repealed provision authorizing commissioners' courts to make allowance of commissions for handling the school fund by the county treasurer was omitted, but that no other change was made. Article 2405 was carried forward to article 2469 without change.

Instead of carrying forward section 47 of the act of 1891 into the chapter on Education, where it had previously been, the codifiers rearranged its position and inserted it as article 2468 in the chapter relating to the compensation of county treasurers, and these three articles (2467, 2468, and 2469) were carried forward without change into the revision of 1911 as articles 3873, 3874, and 3875.

It is our conclusion that county treasurers in this state have never been included in what is commonly designated as the maximum fee bill. It will be found upon examinations of articles 3881 to 3886, inclusive, of

the Revised Statutes of 1911, that the county treasurer is nowhere mentioned in those articles. The compulsory collection and wrongful retention of fees by officers specifically mentioned in the maximum fee bill (articles 3881 to 3886, inclusive) seems to be regulated and dealt with by articles 110, 111, 112, and 113 of the Penal Code, but it will be found, upon inspection of those articles of the Code that the county treasurer is not mentioned in any of them. It seems to us that had it been the purpose of the Legislature to require the county treasurer to pay over to the county money received from sources other than the county itself, the Legislature would have included him along with other officers, and made it his duty to pay over to the county fees collected by him over and above any amount to which he was not entitled. We conclude that the $2,000 limitation of compensation to the county treasurer by the act of 1879 was merely intended to prevent the commissioners' court from allowing the county treasurer more than $2,000 for services rendered in handling funds belonging to the county itself, and that since the act of 1876, the commissioners' court has not had the authority to fix the compensation of the county treasurer for handling school funds, but that the Legislature itself, by that act, fixed the compensation of the treasurer, and that his compensation as such has been fixed by the Legislature itself ever since that act, to the exclusion of the commissioners' court.

In the case of Charlton v. Harris county, reported in 228 S. W. 969, the Court of Civil Appeals for the First District held that Harris county could not recover from its treasurer, as moneys wrongfully retained by him, commissions which had been collected by him for handling money of the drainage district of the county, holding, in substance, that the commissioners' court had no authority to fix his compensation for such services, and announcing, clearly, also, that the county treasurer had never been included in the maximum fee bill of this state. While school funds were not there involved, yet the legal point involved is the same, and we hold with the Galveston court that the county treasurer has never been included in the maximum fee bill, and that since the act of 1876, hereinbefore mentioned, the commissioners' court of the county has had no authority to fix his compensation for handling school funds, but that the authority of that court has been limited by the Legislature, so as to prevent it from allowing him more than $2,000 per annum as commission for handling county funds proper.

[2] It is apparent from the conclusions above expressed that the trial court was in error in rendering judgment against Charlton and his bondsmen in favor of Harris county for the commissions received and retained by him for handling the school funds mentioned, and the trial court's judgment in that regard is therefore reversed. It is also apparent, as the record now stands, that the amount claimed by the county against Charlton and his bondsmen for shortage in his accounts with the county relative to county funds proper is less than would confer jurisdiction upon the trial court, and therefore the trial court's judgment as to the amount of such shortage cannot be affirmed, because there was no jurisdiction in the court to render judgment for such amount. The judgment will therefore be reversed, and the cause remanded to the trial court, with instructions to dismiss the case from its docket, unless an amount shall be claimed by the county against Charlton for handling county funds proper, which would give the court jurisdiction.

Reversed and remanded.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes